O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JUANITA M. SMALLWOOD, | ) | Case No. EDCV 12-00023 VAP (DTBx) |
| Plaintiff, | ) | |
| v. | ) | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| UNITED STATES GOVERNMENT, | ) | **[Motion filed on October 19, 2012]** |
| Defendants. | ) | |

The Court has received and considered all papers filed in support of and in opposition to the Government's Motion for Summary Judgment.  The Motion is appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  The Court GRANTS the Government's Motion for Summary Judgment.

## I. BACKGROUND

**A. Procedural Background**

On September 22, 2000, Plaintiff Juanita M. Smallwood filed a lawsuit against a fellow correctional officer, Ray Beltran, and the California Department of Corrections

("CDC"), for which she was a correctional officer, in the Superior Court for the State of California alleging (1) gender discrimination; (2) harassment on the basis of gender; (3) race discrimination; (4) harassment on the basis of race; (5) retaliation; (6) sex discrimination; and (7) discrimination and harassment in violation of public policy.  (Statement of Genuine Issues of Material Fact in Opposition to MSJ ¶¶ 1, 2 ("SGI" (Doc. No. 31); Motion for Summary Judgment ("MSJ"), Ex. A.)

On August 6, 2002, the Superior Court denied the State's Motion for Summary Judgment, granted summary adjudication as to Ms. Smallwood's claims for race discrimination, harassment on the basis of race, sex discrimination in violation of the California Constitution, and discrimination and harassment in violation of public policy.  (MSJ, Ex. B-4 at 1-2.)  The Superior Court denied summary adjudication as to Ms. Smallwood's claims for gender discrimination, gender harassment, and retaliation.  (Id. at 2.)  Ms. Smallwood then filed her First Amended Complaint with the Superior Court, in which she alleged the same seven claims in her original complaint but added another correctional officer as a defendant.  (See MSJ, Exs. C, D; SGI ¶ 14.)  On January 16, 2004, Ms. Smallwood, the State, and the individual defendants entered into a settlement agreement ("Settlement Agreement" or "Agreement").  (MSJ, Ex. F.)

On January 5, 2012, Ms. Smallwood filed her complaint with this Court ("Complaint") alleging claims for damages in the form of a refund for the taxes she paid on her settlement proceeds pursuant to 26 U.S.C. § 104 and 26 U.S.C. § 6511. (Compl. (Doc. No. 1).)  On May 30, 2012, Ms. Smallwood filed her First Amended Complaint ("FAC"), making the same claim but only under section § 104. (Doc. No. 15.)

On October 19, 2012, the State moved for summary judgment.  (Motion for Summary Judgment ("MSJ") (Doc. No. 27).)  Along with its Motion for Summary Judgment, the State filed a Statement of Uncontroverted Facts and Conclusions of Law (Doc. No. 27-2); Request for Judicial Notice ("RJN") requesting the Court to take notice of the Small Business Job Protection Act of 1996 and portions of the Act's legislative history (Doc. No. 28);[1] Declaration of Jean Rhee ("Rhee Declaration" (Doc. No. 27-1)); and various exhibits in support of the MSJ (Doc. No. 29).

On October 31, 2012, Ms. Smallwood filed a Memorandum of Points and Authorities in Opposition to Defendants' Motion for a Summary Judgment("Opp'n" (Doc. No. 30)), a Statement of Genuine Issues ("SGI" (Doc. No. 31)), and a

---

[1] The Court finds the State's submitted exhibit judicially noticeable and appropriate for consideration here.

3

1   Declaration in Opposition to the Motion for a Summary

2   Judgment ("Smallwood Declaration" (Doc. No. 32)).  The

3   State filed its Reply on November 2, 2012.  (Doc. No.

4   35.)

5

6                          **II. FACTS**

7        The following material facts are supported adequately

8   by admissible evidence and are uncontroverted.[2]  They are

9   "admitted to exist without controversy" for the purposes

10  of these motions.  See L.R. 56-3 (facts not "controverted

11  by declaration or other written evidence" are assumed to

12  exist without controversy); Fed. R. Civ. P. 56(e)(2)

13  (stating that where a party fails to address another

14  party's assertion of fact properly, the court may

15  "consider the fact undisputed for purposes of the

16  motion").

17

18       In her state court complaint, Ms. Smallwood claims

19  that from 1997 until she transferred to a different work

20  site in 1999, she was stalked by fellow correctional

21  officer Ray Beltran, resulting in emotional stress and

22  poor physical health (MSJ, Ex. A; Smallwood Decl. at 7.)

23  As a result of the alleged harassment and abuse from Ray

24  Beltran and others, and from the alleged failure of CDC

25  to intervene, Ms. Smallwood alleges that she suffered a

26  _____

27        [2] To the extent any facts submitted by the parties
    are not mentioned, the Court has not relied on them in
28  reaching its decision.

                              4

variety of physical injuries and physical sickness of
which the State was aware before it entered into the
Settlement Agreement.  (Smallwood Decl. ¶¶ 24, 52, 53.)

On January 16, 2004, Ms. Smallwood and the State
entered into the out-of-court Settlement Agreement,
pursuant to which the State disbursed $995,000.00 into a
trust fund set up by Ms. Smallwood's attorney, Samuel J.
Wells. (SGI ¶ 28.)

Although Mr. Wells and the States' attorneys had
verbally agreed to deposit Ms. Smallwood's settlement
into an annuity, Ms. Smallwood noticed after signing the
Agreement that the annuity was not mentioned.  (Smallwood
Decl. ¶¶ 30-32.)  Since the Agreement had been executed,
Ms. Smallwood's attorneys informed her that the annuity
portion could only be added into the settlement if she
agreed to subtract $200,000.00 from the damages she had
received.  (Id.)  Ms. Smallwood did not agree to these
terms, and thus the issue of taxation went unresolved.
(Id.)

Ms. Smallwood then consulted several accountants and
members of the Internal Revenue Service ("I.R.S.") office
in San Bernardino to ascertain if the settlement was
excluded from taxation under Internal Revenue Code,
section 104(a)(2). (Id. ¶¶ 36-38.)  After consulting

1  Jennifer Starbuck, a certified public accountant, Ms.
2  Smallwood paid the Franchise Tax Board $42,885.00 and the
3  United States Treasury $157,245.00 (Id. ¶ 40.)  On May 8,
4  2008, Ms. Smallwood contacted the I.R.S. to request a tax
5  refund.  (Id. ¶ 43.)

6

7     After receiving no reply for five months, Ms.
8  Smallwood met with members of the San Bernardino I.R.S.
9  office who informed her that she would have to go before
10 an Appeals Officer because she was requesting a full tax
11 refund.  (Id. ¶ 46.) On February 19, 2009, Ms. Smallwood
12 met with an Appeals Officer, who denied her claim on the
13 ground that her damages were awarded for employment
14 discrimination, which did not qualify for tax exclusion
15 under section 104(a)(2) (Id. ¶ 54.)

16

17                    **II. LEGAL STANDARD**
18     A court shall grant a motion for summary judgment
19 when there is no genuine issue as to any material fact
20 and the moving party is entitled to judgment as a matter
21 of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty
22 Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving
23 party must show that "under the governing law, there can
24 be but one reasonable conclusion as to the verdict."
25 Anderson, 477 U.S. at 250.

26

27

28

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. <u>See</u> <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998) (citing <u>Anderson</u>, 477 U.S. at 256-57); <u>Retail Clerks</u> <u>Union Local 648 v. Hub Pharmacy, Inc.</u>, 707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact.  <u>Celotex Corp. v.</u> <u>Catrett</u>, 477 U.S. 317, 323 (1986).  Because summary judgment is a "drastic device" that cuts off a party's right to present its case to a jury, the moving party bears a "heavy burden" of demonstrating the absence of any genuine issue of material fact.  <u>See Avalos v. Baca</u>, No. 05-CV-07602-DDP, 2006 WL 2294878 (C.D. Cal. Aug. 7, 2006) (quoting <u>Nationwide Life Ins. Co. v. Bankers</u> <u>Leasing Ass'n, Inc.</u>, 182 F.3d 157, 160 (2d Cir. 1999)).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case.  <u>Id.</u>; <u>Horphag Research Ltd. v.</u> <u>Garcia</u>, 475 F.3d 1029, 1035 (9th Cir. 2007).  "[A] summary judgment motion may properly be made in reliance

solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"   <u>Celotex</u>, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c)).

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322; <u>Anderson</u>, 477 U.S. at 252.  <u>See also</u> William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, <u>Federal Civil Procedure Before Trial</u> § 14:144.  A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  <u>Anderson</u>, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party.  <u>Scott v. Harris</u>, 550 U.S. 372, 378, 380 (2007); <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

Finally, where the plaintiff is pro se, the Court "must consider as evidence in his opposition to summary

1  judgment all of [his] contentions offered in motions and
2  pleadings, where such contentions are based on personal
3  knowledge and set forth facts that would be admissible in
4  evidence, and where [he] attested under penalty of
5  perjury that the contents of the motions or pleadings are
6  true and correct."  Jones v. Blanas, 393 F.3d 918, 922-23
7  (9th Cir. 2004)

8                         **III. DISCUSSION**
9  **A.  Whether Ms. Smallwood Must Pay Tax on Her Settlement**
10     **Proceeds Under 26 U.S.C. § 104(a)(2)**

11     **1.  Excludable Income Under 26 U.S.C. § 104(a)(2)**
12     The Internal Revenue Code broadly defines taxable
13  gross income as "all income from whatever source
14  derived," with exceptions delineated within Title 26.  26
15  U.S.C. § 61(a). The U.S. Supreme Court has "repeatedly
16  emphasized the 'sweeping scope' of this section and its
17  statutory predecessors." Commissioner v. Schleier, 515
18  U.S. 323, 327 (1995).  As a corollary, the Court has
19  established that exclusions from taxable income under
20  section 61(a) "must be narrowly construed."  Id. at 327-
21  28 (internal quotation marks omitted).  The exception to
22  taxable gross income relevant to Plaintiff's claims here
23  includes "the amount of any damages (other than punitive
24  damages) received (whether by suit or agreement and
25  whether as lump sums or as periodic payments) on account
26  of personal physical injuries or physical sickness."  26
27  U.S.C. § 104(a)(2).
28

Congress added the limiting language of "physical injuries or physical sickness" through the Small Business Job Protection Act of 1996 ("SBJPA").  Pub. L. No. 104-188, § 1605, 110 Stat. 1755, 1838.  While Congress did not provide guidance specific to the meaning of "physical injuries or physical sickness," it did expand on its relationship to "emotional distress":

> For purpose of paragraph (2), emotional distress shall not be treated as a physical injury or physical sickness. The preceding sentence shall not apply to an amount of damages not in excess of the amount paid for medical care (described in subparagraph (A) or (B) of section 213(d)(1)) attributable to emotional distress.

26 U.S.C. § 104(a).

The Ninth Circuit has interpreted section 104(a)(2) to require that a taxpayer seeking to exclude received damages from gross income establish that the damages were received (1) through prosecution or settlement of an action based upon tort or tort-type rights[3] and (2) on account of personal physical injuries or sickness.  See Rivera v. Baker West, Inc., 430 F.3d 1253, (9th Cir. 2005); Commissioner v. Schleier, 515 U.S. 323, 336-37 (1995) (quotation marks omitted); see also MSJ at 8 ("Taken together, the SBJPA amendments eliminated the section 104(a)(2) exclusion for damages received on account of emotional distress 1)unless the emotional

---

[3] The "primary characteristic of an action based upon . . . tort type rights [is] the availability of compensatory remedies." Commissioner v. Schleier, 515 U.S. 323, 335 (1995) (quotation marks omitted).

distress is attributable to a physical injury or physical
sickness, or 2) except to the extent the damages do not
exceed amounts paid for medical care attributable to
emotional stress."). The second prong of the test is
satisfied when "there is a 'direct causal link' between
the damages and the personal injuries sustained[.]"
Banaitis v. Commissioner, 340 F.3d 1074, 1080 (9th Cir.
2003), rev'd on other grounds Banks v. Commissioner, 543
U.S. 426 (2005); Rivera, 430 F.3d at 1257.

The parties do not dispute that the sum in question
was received through prosecution of an action based upon
tort or tort-type rights, thus satisfying the first prong
of the test established in Commissioner v. Schleier.
(See MSJ at 12.) The central dispute here is whether the
damages Ms. Smallwood received pursuant to the settlement
agreement were to compensate her for physical injuries or
physical sickness as required under section 104(a)(2)'s
rule for exclusion. (Id.)

The primary concern in Schleier was ensuring that
only damages intended to compensate the plaintiff for
personal injuries would be excluded from gross income for
tax purposes. (See Robinson v. C.I.R., 70 F.3d 34, 37
(1995) (explaining why punitive damages, as opposed to
compensatory damages, may not be excluded as gross
income). For example, an age discrimination claim for

back pay may involve a personal injury, but the back pay
would be awarded regardless of the personal injury.  See
Schleier, 515 U.S. at 330 ("In age discrimination, the
discrimination causes both personal injury and loss of
wages, but neither is linked to the other.").  The Court
must first determine whether the Settlement Agreement
proceeds paid to Ms. Smallwood were intended to
compensate her for "personal physical injuries or
physical injuries" pursuant to section 104(a)(2).
Rivera, 430 F.3d at 1257.  The Court begins this inquiry
by looking to the language of the underlying agreement.
See id.; see also Pipitone v. United States, 180 F.3d
859, 863 (7th Cir. 1999) ("In [analyzing whether the
damages are excluded under section 104(a)(2)], we first
examine the language of the Settlement Agreement
itself.").

### a.  The Settlement Agreement

On January 16, 2004, Ms. Smallwood entered into a
binding settlement agreement with the State of California
"intended to be in full and final resolution of [Ms.
Smallwood's] pending suit against the State and Ray
Beltran."  (MSJ, Ex. J. "Settlement Agreement" or
"Agreement.") The first two paragraphs of the Agreement
refer to Ms. Smallwood's "application for a disability
pension" and detail what she must do when her application
is either approved or denied. (Id. ¶¶ 1, 2.)  Paragraph
three states Ms. Smallwood will dismiss her pending suit

12

with prejudice. (<u>Id.</u> ¶ 3.) In paragraph four, the State agrees to pay $995,000.000 to Ms. Smallwood's counsel to be placed in a client trust fund. (<u>Id.</u> ¶ 4.) Paragraph four states, "The Form 1099 will likewise be issued to the taxpayer ID associated with said client trust fund." (<u>Id.</u>) Paragraph 5 states,

> Defendant State will cause a representative of CDC of the authority of Associate Warden or higher to write a letter to CalPERS stating CDC believes, based on a review of medical and psychological reports submitted to the workers compensation carrier, Ms. Smallwood should not be returned to CDC in any capacity and that her application should be approved by CalPERS.

(<u>Id.</u> ¶ 5.)

The reference in paragraph five to Ms. Smallwood's "medical and psychological reports" are the only reference to injuries in the Agreement. In the Ninth Circuit, "[i]f the [settlement] agreement lacks express language specifying the purpose of the compensation, we will then examine the intent of the payor." <u>Rivera</u>, 430 F.3d at 1257

### b. Intent of Settlement Agreement Payment

Determining the payor's intent can be "'based on all the facts and circumstances of the case, including the complaint that was filed and the details surrounding the litigation.'" <u>Id.</u> (quoting <u>Allum v. Commissioner</u>, 90 T.C. Memo. 74 (2005).

Here, Ms. Smallwood declares that she has "testified at great lengths regarding all aspects of the personal physical injuries and sickness CDC caused in numerous sets of Demands for Production, Inspection of Documents and Tangible Things, Demands for Identification, Production of Documents, Form Interrogatories and Special Interrogatories." (Smallwood Decl. ¶ 24.)  Ms. Smallwood declares that, as a result of her treatment while employed by the State, she "became physically and mentally sicker every day" (id. ¶ 52) and was "diagnosed with Hashimoto's Auto-immune disease which was triggered by the excessive amount of severe stress that CDC had caused and [for which] I now . . . take medication daily." (Id. ¶ 53.)  Ms. Smallwood further declares that she has "medical records" and "independent reports that clearly show signs of personal physical injuries and sickness such as, dysfunctional uterine bleeding, dehydration, viral/bacterial infections, vertigo, excessive vomiting, dizziness, hair loss, [p]sychological trauma, memory loss, facial scar[r]ing/discoloration, post-traumatic stress disorder, and low blood pressure." (Id. ¶ 58.)  Ms. Smallwood's medical records allegedly show that she also "had been admitted to several hospitals due to the injuries and sickness" described above.  (id.)

On March 12, September 19, September 27, October 16, December 6, and December 7 of 2001; August 2 of 2002; and July 23 and July 24 of 2003, the State deposed Ms. Smallwood. (Smallwood Deposition, Ex. 9, attached to Smallwood Decl.) In her deposition, Ms. Smallwood testified as to multiple hospitalizations, the latter for stress-induced uterine bleeding (id. at 60-61; 676-82); various medical examinations (id. at 128-29; 177-182; 569; 775-76; 790-91); weight loss, hair loss, stomach pains, a stress-induced gynecological infection and heavy bleeding (id. at 131-134; 472; 676-82; 1282); skin conditions (id. 776-78); headaches and dizziness (id. 794-97); memory loss (id. at 883-84); and being placed on medication after being threatened with a noose (id. at 885). Ms. Smallwood has also made declarations regarding her "blurred vision, bacterial/viral infections, and continuous colds." (Smallwood Decl. ¶ 15.)

In Ms. Smallwood's Complaint, she alleges, "As a direct result of the conduct of Defendants, and each of them, MS. SMALLWOOD has suffered, and will continue to suffer, severe mental, psychological, and physical injuries, and has incurred, and will continue to incur, costs for treatment of her injuries." (Compl. ¶ 45.) Separately, Ms. Smallwood alleges "severe mental and emotional distress" as the "direct result" of Defendants' conduct. (Id. ¶ 46.)

1    Based on the above evidence, Ms. Smallwood has shown

2  sufficiently a triable factual dispute as to whether, or

3  as to what extent, the Settlement Agreement was intended

4  to compensate her for her physical injuries and physical

5  sickness.   Thus, the Government has failed to show that

6  it is entitled to summary judgment on the ground that the

7  damages paid to Ms. Smallwood are not excludable under

8  section 104(a)(2).

9
       **2.   Whether Ms. Smallwood is Entitled to a Tax
10            Refund**

11    "In a refund suit the taxpayer bears the burden of

12  proving the amount he is entitled to recover. It is not

13  enough for him to demonstrate that the assessment of the

14  tax for which refund is sought was erroneous in some

15  respects." <u>United States v. Janis</u>, 428 U.S. 433, 440

16  (1976) (citing <u>Lewis v. Reynolds</u>, 284 U.S. 281 (1932).

17  That is, even if there is a triable issue of fact

18  regarding whether the Settlement Agreement proceeds are

19  excludable under section 104(a)(2), the Court may still

20  grant summary judgment in favor of the Government if the

21  Government can show that, as a matter of law, Ms.

22  Smallwood is not entitled to a tax refund.

23

24    The Government argues, first, that Ms. Smallwood

25  failed to report as taxable income the amount she paid to

26  her legal counsel as a contingent fee.  (<u>See</u> MSJ at 19-

27  23.)  In 2005, the Supreme Court held,

28

> The attorney is an agent who is dutybound to act only in the interests of the principal, and so it is appropriate to treat the full amount of the recovery as income to the principal. . . . The portion paid to the agent may be deductible, but absent some other provision of law it is not excludable from the principal's gross income.

Commissioner v. Banks, 543 U.S. 426, 436-37 (2005)

Pursuant to the Settlement Agreement, the State paid a total of $995,000.00 in damages, $398,000.00 of which was allocated for attorneys' fees per Ms. Smallwood's 1999 attorney/client retainer agreement with Samuel J. Wells. (See Statement of Genuine Issues of Material Fact in Opposition to Motion for Summary Judgment ¶ 28 ("SGI") (Doc. No. Ex.G-1, attached to MSJ.) Additionally, Ms. Smallwood's attorney, Mr. Wells, had advanced Ms. Smallwood $92,306.90 to cover costs and expenses related to the case. (Id.; MSJ at 21, Ex. G-1). Mr. Wells deducted his fees and costs incurred representing Ms. Smallwood in the matter and distributed the remainder of the $995,000.00 to Ms. Smallwood. (id. ¶ 29.) Mr. Wells's firm then issued Ms. Smallwood a 1099-MISC form, which stated that she was paid $504,693.10 from the attorney's client trust fund account as "nonemployee compensation." (id. ¶ 30; Ex. H.) On Ms. Smallwood's 2004 1040 Income Tax form, she reported the income she received in 2004 as $509,701.00.[4] (id. ¶ 32; Exs. I, J.)

---

[4] In addition to the $504,693.10 that Ms. Smallwood received per the Settlement Agreement, she reported Form W-2 wages in the amount of $4,930.00 from the State of California. (id. ¶ 33, Ex. J at 2.) Ms. Smallwood does not dispute that the amount she reported in wages, "if
(continued...)

1    In the instant action, Ms. Smallwood seeks a refund

2  of $155,673.00 of tax paid on the portion of the

3  Settlement Agreement proceeds she reported on her 2004

4  income tax return.  (Compl.; FAC; SGI ¶ 38.)   The

5  Government argues,

6        Because plaintiff omitted $490,307[5] of income that
         should have been reported on her 2004 income tax
7        return and did not pay tax on that amount, to meet
         plaintiff's burden of proof, plaintiff would have
8        to establish not only that she did now owe tax on
         the amount paid directly to her under section
9        104(a)(2), but also that, under sections 61 and
         212 and the Supreme Court's holding in Banks, she
10       did not owe tax on the $490,307 portion of the
         settlement she also paid to her attorney.
11  (MSJ at 22.)

12    Regarding section 104(a)(2), as discussed above, Ms.

13  Smallwood's burden here is only to show a genuine issue

14  as to any material fact, which she has done sufficiently

15  regarding whether the Settlement Agreement was intended

16  to, or to what extent it was intended to, compensate Ms.

17  Smallwood for her physical injuries and physical

18  sickness.

19

20    Ms. Smallwood has paid taxes on the $504,693.10 (the

21  amount she received in damages minus her attorney's fees)

22  _____

23      [4](...continued)
    added to the amount she received pursuant to the
24  settlement agreement, $504,693.10, totals only
    $509,126.10, even though she [reported] $509,701 of
25  income for wages on line 7 of her Form 1040 for 2004."
    (id.)   This is a discrepancy of $574.90.

26

27      [5] This figure is the amount of the recovery that Ms.
    Smallwood paid her attorney, Mr. Wells ($398,000.00),
    plus the amount Mr. Wells advanced to Ms. Smallwood to
28  cover expenses ($92,306.90).  (SGI ¶ 28; MSJ at 21-22.)

1    and she seeks a refund on that amount.  The Government is

2    incorrect that Ms. Smallwood "would have to establish not

3    only" that she did not owe taxes on that amount "but also

4    that . . . she did not owe tax on the $490,307."  (MSJ at

5    22.)  Ms. Smallwood would need only establish that she

6    paid more in taxes than she owed.  If Ms. Smallwood paid

7    tax on the larger amount that she did not in fact owe,

8    that would more than cover the taxes she might owe on the

9    $490,307, thus entitling her to a refund in the amount of

10   taxes on the difference between the two amounts.  ("[I]n

11   order for the taxpayer to be successful in a refund suit,

12   the taxpayer must establish that he, in fact, overpaid

13   his taxes."  MSJ at 18 (citing Lewis v. Reynolds, 284

14   U.S. 281 (1932))).  In that scenario, as I.R.S. Revenue

15   Agent Jean Rhee declares, Ms. Smallwood "would be owed a

16   refund of $5,033."  (Declaration of Jean Rhee in Support

17   of MSJ ¶ MSJ (Doc. No. 27-1).)

18

19        The Court finds that, as a matter of law, Ms.

20   Smallwood erroneously excluded from her declared income

21   the amount she paid to Mr. Wells in attorneys' fees.  Ms.

22   Smallwood argues that the taxes at issue were allegedly

23   owed before the Banks decision, when the Ninth Circuit

24   "had conflicting decisions" on the whether an attorney's

25   contingency fee was excludable from gross income.  (See

26   Opp'n at 12.)  Ms. Smallwood overlooks that the divergent

27   decisions were the result of a state-specific test.  See

28

1  <u>Banaitis v. Commissioner</u>, 340 F.3d 1074, 1081 (9th Cir.

2  2003) <u>rev'd sub nom.</u> Banks, 543 U.S. 426 ("The question

3  of whether attorneys fees paid under a contingent fee

4  contract with a plaintiff are includable in the

5  plaintiff's gross income involves two related questions:

6  (1) how state law defines the attorney's rights in the

7  action, and (2) how federal tax law operates in light of

8  this state law definition of interests.").  And, before

9  <u>Banks</u>, the Ninth Circuit had stated, "Not long ago, we

10 reached a . . . conclusion about the operation of

11 California law, holding contingent attorneys fees

12 includable in the plaintiff's gross income."  <u>Id.</u> at 1081

13 (citing <u>Benci-Woodward v. Commissioner</u>, 219 F.3d 941, 943

14 (9th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1112 (2001).

15 Therefore, under federal and state law, and both

16 presently and at the time the taxes were owed, an

17 attorney's contingency fee in this scenario must be

18 included as gross income, thus requiring Ms. Smallwood to

19 pay tax on the $490,307 in attorney's fees and expenses.

20

21    Ms. Smallwood also states that she "would not have

22 settled her case if she were aware that the law would

23 change, and she would have to pay the majority if not all

24 of her settlement in [a]ttorney fees, costs, and taxes.

25 Plaintiff believes that she would have prevailed at trial

26 and therefore would have had her attorney fees and costs

27 shifted under the fee-shifting provisions . . . that her

28

1  case was filed under." (Opp'n at 13.)  One purpose of
2  settlement is to avoid the risk and expense of protracted
3  litigation; the tradeoff for the plaintiff is that she
4  loses the chance to prevail at trial.  Ms. Smallwood
5  believes that the amount she would recover after taxes is
6  insufficient to compensate her for the alleged racially
7  and sexually charged abuse and torment that the CDC
8  failed to prevent or correct.  This may be the case, but
9  it is not something the Court considers in assessing Ms.
10 Smallwood's claim for a tax refund in the instant matter.
11
12      Given the Court's finding that the attorney's fee
13 paid is not excludable from taxable income, in order for
14 Ms. Smallwood to be owed a refund she "would need to
15 establish that more than $490,306 of the $504,693 portion
16 of the settlement award she retained was excludable from
17 income." (Rhee Decl. ¶5.)  That is, Ms. Smallwood would
18 need to show that more than 97% of her recovery is
19 excludable.  (MSJ at 23.)  The Court finds, as a matter
20 of law, that Ms. Smallwood has not made such a showing.
21
22      In her Opposition, Ms. Smallwood relies largely on
23 Parkinson v. Commissioner, T.C. Memo. 2010-142, to argue
24 that her Settlement Agreement proceeds are excludable
25 under section 104(a)(2).  (See Opp'n at 10.)  In
26 Parkinson, the petitioner, after suffering a heart
27 attack, filed an Americans with Disabilities Act claim
28

1   against his employer for failing to accommodate his heart

2   condition, after which the parties entered into a

3   settlement agreement.   <u>Id.</u> at *1.   In parsing whether the

4   settlement agreement between the petitioner and his

5   employer was intended to compensate the petitioner for

6   physical injuries or for emotional distress, the Court

7   stated, "Clearly, . . . petitioner's State court

8   complaint did reflect, extensively, his assertions of

9   physical injury and sickness" and that "[b]ecause

10  petitioner's physical injuries were the overriding focus

11  of his State court complaint, we have no doubt that those

12  physical injuries figured prominently among the

13  "noneconomic damages" for which the settlement payment

14  was made."   <u>Id.</u> at *6.   The court also found, however,

15  that

16          Petitioner has not established . . . that the
            settlement payment did not include elements
17          other than compensation for physical injury or
            physical sickness. After all, petitioner's State
18          court complaint asserted claims of both physical
            injury and "psychological" injury that "forced
19          him to expend substantial sums for treatment".
            Although the claims of psychological injury seem
20          less fully described in the complaint than the
            claims of physical injury, on this record we
21          cannot say that they figured any less
            prominently among the "noneconomic damages" for
22          which the settlement payment was made. . . .
            Accordingly, bearing against petitioner, who has
23          the burden of proof, we find that one-half of
            the settlement payment was made on account of
24          petitioner's physical injuries.
    <u>Id.</u>
25

26          While Ms. Smallwood has shown that there is a genuine

27  issue of material fact whether the State intended to

28  compensate her for physical as opposed to emotional

                                22

injuries or sickness, Ms. Smallwood cannot show that the State intended for more than 97% of the damages to compensate for physical injuries or sickness.  Unlike in Parkinson, Ms. Smallwood's complaint did not "extensively" concern physical injuries or sickness.  In fact, of the 109 paragraphs in Ms. Smallwood's Complaint, "[o]nly two paragraphs allege the type of injuries which occurred to plaintiff," and the vast majority concern claims of non-physical harassment, discrimination, and retaliation.  (SGI ¶¶ 5-7.)  Similarly, Ms. Smallwood's Settlement Conference Brief devotes only several sentences out of 21 pages to general claims of physical injury and sickness.  (See Plaintiff's Mandatory Settlement Conference Brief, Ex. E, attached to MSJ.; SGI ¶ 21.) Thus, Ms. Smallwood presents far less persuasive evidence than the petitioner in Parkinson regarding the payor's intent; she therefore cannot prove that even 50% of the proceeds can be excluded, much less prove that over 97% should be.  Cf. Domeny v. Commissioner, T.C. Memo. 2010-9 (cited in Opp'n at 11) (finding that the settlement agreements proceeds were excludable where the claims were extensively based on the plaintiff's physical injuries and sickness related to the plaintiff's multiple sclerosis).

1    Therefore, because Ms. Smallwood could not prevail as

2  a matter of law on her claim for a tax refund, the Court

3  finds that the Government is entitled to summary

4  judgment.

5

6                        **IV. CONCLUSION**

7    For the foregoing, the Court GRANTS the Government's

8  Motion for Summary Judgment and DENIES as moot the

9  parties' Joint Request to Continue Jury Trial (Doc. No.

10 38).

11

12

13

14

15

16 Dated:  _December 28, 2012_        _____

17                                  VIRGINIA A. PHILLIPS

18                                United States District Judge

19

20

21

22

23

24

25

26

27

28